UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 23-1784-KK-ADSx** | Date: | May 28, 2024 |
|---|---|---|---|

| Title: | *Robert Sanchez v. Coast Auto Care and U-Haul Neighborhood Dealer, et al.* |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:     (In Chambers) Order Declining Supplemental Jurisdiction**

## I.
## INTRODUCTION

The Complaint filed in this action asserts a claim for injunctive relief arising out of an alleged violation of the Americans with Disabilities Act ("ADA") and one or more "construction-related accessibility claims" under California law, including a claim for damages pursuant to California's Unruh Civil Rights Act ("Unruh Act"). Because the Court possesses only supplemental jurisdiction over the Unruh Act and any other state law claims, and in light of California's statutory efforts to curtail such claims, the Court ordered Plaintiff to show cause in writing why the Court should exercise supplemental jurisdiction over the state law claim(s) asserted in the Complaint. See 28 U.S.C. § 1367(c). The Court has reviewed Plaintiff's Response to the Court's Order to Show Cause.

## II.
## BACKGROUND

## A.     ADA AND UNRUH ACT CLAIMS

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, "[d]amages are not recoverable . . . only injunctive relief is available[.]" Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)).

The Unruh Act provides "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f). Unlike the ADA, the Unruh Act allows for recovery of monetary damages. A plaintiff may recover actual damages for each offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." Cal. Civ. Code § 52(a). "[A] litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007).

## B.   CALIFORNIA'S LIMITATIONS ON THE FILING OF CONSTRUCTION-RELATED ACCESSIBILITY CLAIMS

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." Whitaker v. Mac, 411 F. Supp. 3d 1108, 1115 (C.D. Cal. 2019). These heightened pleading requirements apply to actions alleging a "[c]onstruction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including, but not limited to, a claim brought under Section 51, 54, 54.1, or 55 [of the California Civil Code], based wholly or in part on an alleged violation of any construction-related accessibility standard[.]" Cal. Civ. Code § 55.52(a)(1). California's heightened pleading standard for construction-related accessibility claims requires a plaintiff to include specific facts concerning the plaintiff's claim, including the specific barriers encountered or how the plaintiff was deterred and each date on which the plaintiff encountered each barrier or was deterred. See Cal. Civ. Proc. Code § 425.50(a). In addition, a complaint alleging construction-related accessibility claims must be verified. See Cal. Civ. Proc. Code § 425.50(b)(1). An unverified complaint alleging construction-related accessibility claims is subject to a motion to strike. Id.

When California continued to experience large numbers of these actions, California imposed additional limitations on "high-frequency" litigants. A "high-frequency litigant" is defined as "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." Cal. Civ. Proc. Code § 425.55(b)(1). The definition of high-frequency litigant also extends to attorneys. See Cal. Civ. Proc. Code § 425.55(b)(2). In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> According to information from the California Commission on Disability Access, more than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. Forty-six percent of all complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation. This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are

entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the federal Americans with Disability Act of 1990 (Public Law 101-336).

Cal. Civ. Proc. Code § 425.55(a)(2).  In response to these "special and unique circumstances," Cal. Civ. Proc. Code § 425.55(a)(3), California imposed a "high-frequency litigant fee" requiring high-frequency litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees.  Cal. Gov't Code § 70616.5.  A high-frequency litigant is also required to allege certain additional facts in the complaint, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number of construction-related accessibility claims filed by the high-frequency litigant in the preceding 12 months, the high-frequency litigant plaintiff's reason for being in the geographic area of the defendant's business, and the reason why the high-frequency litigant plaintiff desired to access the defendant's business.  See Cal. Civ. Proc. Code § 425.50(a)(4)(A).

## C.    SUPPLEMENTAL JURISDICTION

Federal courts are courts of "limited jurisdiction" which "possess only that power authorized by Constitution and statute[.]"  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Pursuant to 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Even if supplemental jurisdiction exists, a district court has discretion to decline to exercise supplemental jurisdiction when "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).  The Supreme Court has described 28 U.S.C. § 1367(c) as "codif[ying]" the principles of "economy, convenience, fairness, and comity" underlying the Supreme Court's earlier jurisprudence concerning pendent jurisdiction.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.  Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present[,] a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.  Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") (internal citation omitted).

Factors relevant to determining whether to exercise jurisdiction over supplemental state law claims include "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims[.]"  City of Chicago, 522 U.S. at 173.  The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  Id. (internal quotation marks omitted).

The Ninth Circuit does not require an explanation of a district court's reasoning for declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367(c)(1)-(3).  San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998).  However, when a district court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4), the court "must articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the Gibbs values provide compelling reasons for declining jurisdiction in such circumstances."  Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 24 F.3d 1545, 1558 (9th Cir. 1994).  According to the Ninth Circuit, this "inquiry is not particularly burdensome."  Id.  When declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying Gibbs values are best served by declining jurisdiction in the particular case (the compelling reasons)."  Id.

## III.
## DISCUSSION

Here, the Court finds "exceptional circumstances" and "compelling reasons" support declining supplemental jurisdiction over Plaintiff's Unruh Act claim and any other state law construction-related accessibility claims asserted in the Complaint pursuant to 28 U.S.C. § 1367(c)(4).

As an initial matter, the instant action presents "exceptional circumstances."  See 28 U.S.C. § 1367(c)(4).  By enacting restrictions on the filing of construction-related accessibility claims, California has manifested a desire to limit the financial burdens California's businesses may face for claims for damages under the Unruh Act and other state law theories of liability.  See Arroyo v. Rosas, 19 F.4th 1202, 1212-13 (9th Cir. 2021).  However, because California's heightened pleading standards and increased filing fees do not apply in federal court, plaintiffs can circumvent these restrictions "simply by pairing the Unruh Act claim with a companion ADA claim for injunctive relief."[1]  Id. at 1212.  If the Court were to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and any other state law claims, "the distinctive configuration of California-law rules – which pair a damages remedy with special procedural requirements aimed at limiting suits by high-frequency litigants – would be rendered ineffectual[.]"  See id. at 1211.  The Ninth Circuit has held "[t]hese circumstances are 'exceptional' in any meaningful sense of the term."  See id. at 1213.

---

[1] Notably, since California adopted additional procedural requirements for high-frequency litigants in state court, the number of ADA cases filed in the Central District has increased both numerically and as a percentage of total civil filings.  According to statistics compiled by the Clerk's Office, in fiscal year 2015 – prior to California's imposition of the additional $1,000 filing fee and pleading requirements for high-frequency litigants – there were 1,043 ADA actions filed in the Central District, which constituted approximately 7 percent of the total civil actions filed.  The number and percentage of such cases filed in the Central District increased in the subsequent years, reaching 1,370 cases (9.3 percent of total civil filings) in fiscal year 2016, 1,734 cases (12.1 percent of total civil filings) in fiscal year 2017, 2,571 cases (16.8 percent of total civil filings) in fiscal year 2018, 3,374 cases (21.7 percent of total civil filings) in fiscal year 2019, and 4,296 cases (26.1 percent of total civil filings) in fiscal year 2020.  The Court's Annual Reports of Caseload Statistics are available on the Court's website at https://www.cacd.uscourts.gov/annual-statistical-reports.

Furthermore, the <u>Gibbs</u> values of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction.

First, with respect to judicial economy and convenience, the Court has not yet decided any issues that would be dispositive of Plaintiff's Unruh Act claim or other state law claims. Hence, these considerations favor declining jurisdiction. <u>See</u> <u>Vo v. Choi</u>, 49 F.4th 1167, 1172 (9th Cir. 2022) (affirming district court's order declining to exercise supplemental jurisdiction over Unruh Act claim where district court "declined supplemental jurisdiction . . . well before it ruled on the merits of the ADA claim").

Second, with respect to fairness and comity, "it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements." <u>See</u> <u>Schutza v. Cuddeback</u> (<u>Cuddeback</u>), 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017). Specifically, permitting a plaintiff to pursue construction-related accessibility claims in this Court while evading the limitations California has imposed on such claims is unfair to defendants. <u>See</u> <u>Harrell v. Foothill Market Enterprise, LLC</u>, No. EDCV 24-749-JGB-SHKx, 2024 WL 1978040, at *4 (C.D. Cal. Apr. 25, 2024). In addition, allowing federal courts to operate as an "escape hatch" for pursuing such claims "offends the comity between state and federal courts." <u>Id.</u> As the Ninth Circuit has held, "retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms." <u>Arroyo</u>, 19 F.4th at 1213; <u>see also</u> <u>Cuddeback</u>, 262 F. Supp. 3d at 1031 ("[A]s a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim."). Hence, considerations of fairness and comity favor declining jurisdiction.

Finally, declining supplemental jurisdiction does not deprive Plaintiff of any remedies, nor does it allow an ADA claim for injunctive relief to go unaddressed. The ADA claim remains pending in this Court. Any inefficiencies resulting from the Court's decision to decline to exercise supplemental jurisdiction are problems created by Plaintiff's filing of this action in federal court, rather than in state court, since "there is no relief available to [Plaintiff] in federal court that could not be secured in state court." <u>See</u> <u>Schutza v. Alessio Leasing, Inc.</u>, CV 18-2154 LAB (AGS), 2019 WL 1546950, at *4 (S.D. Cal. Apr. 8, 2019). By declining to exercise supplemental jurisdiction, the Court is merely restoring the balance Congress struck when it enacted the ADA and provided a private right of action for injunctive relief and an award of attorney's fees, but not the recovery of statutory damages. <u>See</u> <u>Wander</u>, 304 F.3d at 858.

Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and any other state law construction-related accessibility claims asserted in the Complaint.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiff's Second, Third, and Fourth Causes of Action are **DISMISSED WITHOUT PREJUDICE**.

**No later than June 4, 2024**, Plaintiff shall file either (1) a statement indicating Plaintiff intends to proceed on Plaintiff's remaining cause of action under the ADA, or (2) a notice voluntarily dismissing this action to enable the hearing of all of Plaintiff's claims in state court.

**Plaintiff is expressly warned that failure to timely file either a statement indicating Plaintiff intends to proceed on the ADA cause of action or a notice of voluntary dismissal will result in this action being dismissed for failure to prosecute and comply with Court orders.** See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**